Paul G. Gardephe (PG-4607)
    (*pro hac vice* application pending)
Peter C. Harvey (PH-7368)
Nicolas Commandeur (NC-4280)
    (*pro hac vice* application pending)
Catherine A. Williams (CW-0003)
    (*pro hac vice* application pending)
PATTERSON, BELKNAP, TYLER & WEBB LLP
1133 Avenue of the Americas
New York, New York 10036-6710
(212) 336-2000
*Attorneys for ESPN, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
          :

CHARLES E. HUMPHREY, JR.,           No. 06 Civ. 02768 (DMC)(MF)
          :

        Plaintiff,       :

          :

      v.         **ORAL ARGUMENT REQUESTED**
          :

VIACOM INC., CBS CORPORATION, CBS    **Return Date:  October 23, 2006**
TELEVISION NETWORK, SPORTSLINE.COM,  :
INC., THE WALT DISNEY COMPANY, ESPN,
INC., THE HEARST CORPORATION, VULCAN, :
INC., VULCAN SPORTS MEDIA and THE
SPORTING NEWS,         :

        Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ESPN, INC.'S  MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ......................................................................................... 4

Fantasy Sports Leagues............................................................................. 4

Plaintiff's Complaint................................................................................. 7

The Gambling-Loss Recovery Statutes ................................................... 8

    The Statutes' History and Purpose........................................................ 9

    The Statutes' Differing Limits on Recovery....................................... 11

ARGUMENT ............................................................................................ 13

I.   LEGAL STANDARD FOR A MOTION TO DISMISS ................... 13

II.  THE GAMBLING-LOSS RECOVERY STATUTES MUST BE NARROWLY
     CONSTRUED.................................................................................. 14

III. DISMISSAL WITH PREJUDICE IS WARRANTED BECAUSE
     PLAINTIFF HAS NOT STATED, AND CANNOT STATE, A CLAIM
     UNDER NEW JERSEY LAW ......................................................... 17

    A.   Plaintiff Fails to State a Claim Under New Jersey's
        Gambling-Loss Recovery Statute ....................................... 19

    B.   The Complaint Should Be Dismissed With Prejudice
        Because Paying an Entry Fee to Participate in
        Fantasy Sports Leagues Is Not Gambling............................ 22

    C.   Even if the Court Were to Consider Statutes Other Than
        New Jersey's, Dismissal is Warranted Because Plaintiff
        Has Failed to State a Claim................................................. 28

    D.   This Court Has the Authority to Abstain From Deciding This Case. ............... 31

CONCLUSION........................................................................................ 34

# TABLE OF AUTHORITIES

## CASES

In re: Alpharma Inc. Sec. Litigation,
    372 F.3d 137 (3d Cir. 2004)......................................................................14

Berkebile v. Outen,
    311 S.C. 50 (1993) ...................................................................................10

Carll & Ramagosa, Inc. v. Ash,
    23 N.J. 436, 129 A.2d 433 (1957)......................................................24 n.18

Chun v. State of New York,
    807 F. Supp. 288 (S.D.N.Y. 1992) .....................................................34 n.19

Club Association of West Virginia, Inc. v. Wise,
    156 F. Supp. 2d 599 (S.D. W.Va. 2001).............................................34 n.19

Cole v. Applebury,
    136 Mass. 525, 1884 WL 10512 (Mass. 1884).........................................15

Colorado River Water Conservation District v. United States,
    424 U.S. 800 (1976)..................................................................................32

Commonwealth of Pennsylvania v. PepsiCo, Inc.,
    836 F.2d 173 (3d Cir. 1988)................................................................13, 20

DM Research v. College of American Pathologists,
    170 F.3d 53 (1st Cir. 1999) .................................................................13, 22

Donovan v. Eastern Racing Association,
    324 Mass. 393, 86 N.E.2d 903 (Supreme Judicial Court, 1949) ...............15

Fitzgerald v. Schloss,
    33 Vroom 472, 41 A. 677 (N.J. Supreme Court 1898)..............................19

Glick v. MTV Networks,
    796 F. Supp. 743 (S.D.N.Y. 1992) ...........................................................15

Goldberg v. Feiga,
    170 Mass. 146, 48 N.E. 1073 (Supreme Judicial Court, 1898) .................29

Hartlieb v. Carr,
    94 F. Supp. 279 (E.D. Ky. 1950) ..............................................................15

# TABLE OF AUTHORITIES

Hooker v. Depalos,
    28 Ohio St. 251, 1876 WL 6 (Ohio 1876) ...................................................................16

Johnson v. Collins Entertainment Co., Inc.,
    199 F.3d 710 (4th Cir. 1999) .................................................................33, 34 n.19

Johnson v. McGregor,
    41 N.E. 558 (Ill. Sup. Ct. 1895) ..............................................................................16

Justice v. The Pantry,
    335 S.C. 572 (1999) .................................................................................15, 20, 29

Kizer v. Walden,
    198 Ill. 274, 65 N.E. 116 (Ill. 1902) .......................................................................15

Lac D'Amiante du Quebec, LTEE v. America Home Assurance Co.,
    864 F.2d 1033 (3d Cir. 1988)..................................................................................32

Las Vegas Hacienda, Inc. v. Gibson,
    77 Nev. 25, 359 P.2d 85 (Nev. 1961) .....................................................................26

Louisiana Power & Light Co. v. Thibodaux,
    360 U.S.  25 (1959)..................................................................................................31

Martin v. Stewart,
    438 F. Supp. 2d 603 (D.S.C. 2006)....................................................................34 n.19

Morse v. Lower Merion School District,
    132 F.3d 902 (3d Cir. 1997)............................................................................ *passim*

Ranney v. Flinn,
    60 Ill. App. 104, 1895 WL 4073 (Ill. App. 3d Dist. 1894) ..........................................29

Salomon v. Taft Broadcasting Co.,
    16 Ohio App. 3d 336, 475 N.E.2d 1292 (Ct. App. 1st Dist., 1984)................11, 16, 27

Salonen v. Farley,
    82 F. Supp. 25 (E.D. Ky. 1949) ...............................................................................10

## TABLE OF AUTHORITIES

Shack v. Dickenshorst,
14 Gummere 120, 122 A. 436 (N.J. Court of Errors and Appeals, 1923) ...................22

State v. America Holiday Association, Inc.,
151 Ariz. 312, 727 P.2d 807 (Ariz. 1986) .................................................24, 25, 26, 28

State v. Schwabie,
84 N.E.2d 768 (Ohio App. 1948)...................................................................................15

Stevens v. Cincinnati Times-Star Co.,
72 Ohio St. 112, 73 N.E. 1058 (Ohio 1905) .................................................................30

Thompson v. Ledbetter,
74 Ga. App. 427, 39 S.E.2d 720 (Ct. App. Div. 2, 1946) ............................................16

Toomey v. Penwell,
76 Mont. 166, 245 P. 943 (Mont. 1926) ....................................................25, 26, 27, 28

Vinson v. Casino Queen, Inc.,
123 F.3d 655 (7th Cir. 1997) ..................................................................................11, 15

Wilkinson v. Stitt,
175 Mass. 581, 56 N.E. 830 (Sup. Jud. Ct., Bristol, 1900).........................................30

Wilson v. Conlin,
3 Ill. App. 517, 1878 WL 10565 (Ill. App. 2d Dist. 1878) ....................................27, 30

Zabady v. Frame,
22 N.J. Super. 68, 91 A.2d 643 (App. Div. 1952) ...........................................20, 21, 22

Zavala v. Wal-Mart Stores, Inc.,
__ F. Supp. 2d __, 2006 WL 2468513 (D.N.J. Aug. 28, 2006)....................................14

## STATUTES

D.C. Stat. Ann. § 16-1702................................................................................................12, 31

Fed. R. Civ. P. 8(a) ................................................................................................................13

Ga. Code Ann. § 13-8-3(b) ....................................................................................................12

720 I.L.C.S. § 5/28-1 .............................................................................................................31

720 I.L.C.S. § 5/28-8 ..................................................................................................12, 29, 31

K.R.S. § 372.010....................................................................................................................31

## TABLE OF AUTHORITIES

K.R.S. § 372.040 ..................................................................................................12

N.J.S.A. 2A:40-1 ...................................................................................18 n.17, 22
N.J.S.A. 2A:40-5 .............................................................................12, 18 n.17

N.J.S.A. 2A:40-6 .............................................................................12, 18 n.17

Ohio R.C. § 3763.02 ..........................................................................12, 31

Ohio R.C. § 3763.04 ..........................................................................12

S.C. Code 1976 § 32-1-10 ..........................................................12, 29, 31

S.C. Code 1976 § 32-1-20 ..........................................................12

## OTHER

9 Anne ch. 19 (1710) (Eng.) ...................................................................9

2006 N.J.S.B. 1106 §§ 4, 5 ..............................................................11, 31

Act to prevent Gaming, February 8, 1797 (N.J.) .................................10

Gambling Act, c. 19, § 356(3)(a) (2005) (Eng.) ...............................10 n.6

Defendant ESPN, Inc. ("ESPN") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiff Charles E. Humphrey, Jr., a Colorado resident who claims never to have participated in ESPN's or any other Defendant's fantasy sports leagues, seeks to recover entry fees paid by residents of New Jersey, the District of Columbia, Georgia, Illinois, Kentucky, Massachusetts, Ohio, and South Carolina who have engaged in this harmless hobby.  Citing centuries old and seldom used *qui tam* gambling-loss recovery statutes from New Jersey, six other states, and the District of Columbia (the "Qui Tam Statutes") – all derived from an eighteenth century English statute – Plaintiff asks this Court to rule that entry fees paid to participate in fantasy sports leagues are recoverable as gambling losses in each of those eight jurisdictions.  Plaintiff's request is unprecedented on several levels. First, no court in these eight jurisdictions – or in any other jurisdiction in the United States – has ever held that participation in fantasy sports leagues constitutes gambling.  Second – under the *qui tam* statutes that Plaintiff relies on to provide him standing to sue – no court has ever allowed recovery by a plaintiff with no

---

[1] Plaintiff has filed a notice of voluntary dismissal as to Defendants The Walt Disney Company and The Hearst Corporation, which are parent companies of ESPN, Inc.

connection to the gambling loss at issue.  Simply put, Plaintiff asks this Court, in a diversity action with no federal question presented, to make new law for eight different jurisdictions, and, in so doing, to hold unlawful a hobby enjoyed by millions of Americans.

Fantasy sports leagues allow participants to select and "manage" virtual teams of professional players in a given sport throughout a sport season, and to compete against other fantasy sports participants based upon the actual performance of those players in key statistical categories.  Fantasy sports leagues have become extremely popular in recent years.  According to the Complaint, 30 million Americans participate in these leagues.  (Cmplt. ¶ 30).  They have earned a place in modern popular culture, and are the subject of countless newspaper and magazine articles, books, internet message boards and water-cooler conversations.  The enormous popularity of fantasy sports is attributable in part to the services offered at internet websites such as ESPN.com, which provide a platform for real-time statistical updates and tracking, message boards, and expert analysis.  ESPN also offers relatively modest prizes to the winners of its various fantasy sports leagues.

There is good reason why no court has ever held that participating in fantasy sports leagues constitutes gambling, and why no state has ever sought to prosecute fantasy sports providers or participants under its gambling statutes.

Courts have long recognized that participation in contests with unconditional entry fees and set prizes – ranging from races to livestock exhibitions to essay contests – is easily distinguished from gambling. Fantasy sports contests such as those offered by Defendant ESPN are just such contests, and participation in fantasy sports leagues does not constitute gambling.

The Qui Tam Statutes cited by Plaintiff were never intended to serve as a vehicle for this type of lawsuit, and Plaintiff's Complaint does not begin to meet the pleading requirements necessary to support his claim. Although he cites the Qui Tam Statutes in one paragraph of the Complaint (Cmplt. ¶ 65), Plaintiff ignores the statutes' definitions of recoverable losses. Plaintiff also ignores the strict pleading requirements applicable to these statutes – which are penal in nature – including the requirement that a plaintiff allege the basic facts supporting his claim, such as which individuals lost money to the defendants, how much was lost, and when it was lost. Indeed, the Complaint does not identify a single individual who participated in ESPN's fantasy sports leagues. ESPN cannot defend against such an ethereal and baseless complaint, nor should it be required to when Plaintiff's claim must fail as a matter of law. Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

# BACKGROUND

## Fantasy Sports Leagues

Participation in fantasy sports leagues has exploded over the past decade. According to the Complaint, 30 million Americans play in fantasy leagues or tournaments in sports ranging from football, baseball and basketball to NASCAR racing. (Cmplt. ¶¶ 30, 49).[2] As further alleged in the Complaint, fantasy sports leagues allow fans to use their knowledge of players, statistics, and strategy to manage their own virtual team based upon the actual performance of professional athletes through a full season of competition. (*Id.* at ¶¶ 45-48). In the early days of fantasy sports, participants compiled and updated the players' statistics manually. But the rapid growth of the internet has fostered services, such as those offered by ESPN, that provide an internet environment and community for playing and discussing fantasy sports and that update statistics frequently and automatically. (*Id.* at ¶ 28). This technology has made fantasy sports much more accessible and popular throughout the country.

Although the rules and services vary somewhat from league to league and from provider to provider, those for ESPN's fantasy sports leagues are generally as follows. Participants pay a fee – ranging from $13.99 to $29.95 – to

---

[2]   Although many of the factual allegations in the Complaint are false, for purposes of this motion to dismiss, they are assumed to be true. *See Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

1312288v1

purchase a fantasy sports team and related services.  (*Id.* at ¶¶ 19, 37).[3]  This

purchase price provides the participant with access to the support services

necessary to manage the fantasy team, including access to "real-time" statistical

information, expert opinions and analysis, and message boards for communicating

with other participants.  The purchase price also covers the data-management

services necessary to run a fantasy sports team.  Using these services, the

participants "draft" a slate of players and track the performance of those players in

key statistical categories throughout the season.  (*Id.* at ¶ 45).  Participants also

manage their team by choosing a roster for each game and trading players with

other participants.  (*Id.* at ¶ 48).  Participants are grouped in separate twelve-team

"leagues" and compete not only against the members of their leagues, but also

against the winners of the other leagues.  (*Id.* at ¶ 38).

The success of a fantasy sports team depends on the participant's skill

in selecting players for his or her team, trading over the course of the season, and

setting the roster for each game.  The team with the best performance – based upon

the statistics of the players chosen by the participant – is declared the winner at the

end of the season.  (*Id.* at ¶ 45).  In the ESPN fantasy games at issue in this case, a

nominal prize – such as a T-shirt or banner – is awarded to each participant whose

---

[3]  At Complaint ¶ 19, plaintiff alleges that the per-team entry fee for ESPN games ranges from $19.95 to $29.95.  However, at Complaint ¶ 37, Plaintiff alleges that the entry fee for five teams is $69.95, which equals $13.99 per team.

team wins in its league. (*Id.* at ¶ 38). The value of this prize – roughly $15 (*id.*) – is considerably less than the $29.95 registration fee charged by ESPN to purchase a single fantasy team. Managers of the best teams in each sport across all leagues are awarded larger prizes, such as a flat-screen TV or a gift certificate. (*Id.* at ¶ 37). These prizes are announced before the fantasy sports season begins, and do not depend upon the number of participants or the amount of registration fees received by ESPN. (*Id.*) And although Plaintiff alleges in his Complaint that participants are induced to play these fantasy games by the remote chance to win one of these relatively modest prizes, he concedes that residents of Arizona, Florida, Louisiana, Montana and Vermont play despite the fact that they are not eligible to win any prizes. (*Id.* at ¶ 39).

Fantasy sports are now a favorite pastime for tens of millions of Americans, providing a way not only to enhance participants' interest in, and enjoyment of, professional sports, but also to interact with friends. Bill Simmons, a popular writer for ESPN and ESPN Magazine, reminisced in one of his columns about playing fantasy baseball with friends and the camaraderie engendered by "draft day": "Maybe it's just a fantasy league, but I can't imagine few things I'll miss more … than the annual draft at Lee's house – cracking the same jokes,

seeing old friends, laughing for five straight hours, putting another year in the books. Maybe you know what I mean."[4]

Notwithstanding the enormous popularity of these games and widespread participation – and notwithstanding the fact that no state has ever chosen to prosecute or enjoin fantasy sports sponsors or participants – Plaintiff asks this Court to hold what no other court in this country has ever held: that fantasy sports constitute unlawful gambling.

**Plaintiff's Complaint**

Plaintiff – who states that he has never played fantasy sports through ESPN's internet service (*id.* at ¶ 9) – filed this action based upon diversity of citizenship.[5] He claims that the registration fees paid by fantasy sports leagues participants constitute wagers or bets, and he seeks to recover these fees pursuant to the *qui tam* gambling loss recovery statutes of New Jersey, Georgia, Illinois, Kentucky, Massachusetts, Ohio, South Carolina, and the District of Columbia. Plaintiff asserts no claim based upon federal law.

The Complaint is truly extraordinary. On the one hand, Plaintiff asks this Court to make new law for eight jurisdictions and to award him millions of

---

[4] Bill Simmons, *Draft Day Swan Song*, ESPN, available at http://espn.go.com/page2/s/simmons/021114.html (Nov. 14, 2002).

[5] Although a Colorado resident, Humphrey chose to file this action in New Jersey. Contrary to Local Civil Rule 10.1(a), he has not listed his address in the Complaint. The Complaint should be stricken on this basis alone.

dollars of damages that he admittedly did not suffer.  On the other hand, he does not bother to plead the elements of the statutes that purportedly form the basis for his cause of action, much less allege facts that would satisfy those elements.  While he provides a chart in the Complaint listing the different *qui tam* loss-recovery provisions that purportedly provide him with standing to bring this action, he ignores the necessary elements under each statute for establishing a recoverable gambling loss.

Indeed, Plaintiff fails to identify a single specific gambling loss in any of the relevant jurisdictions.  Instead, he provides a vague discussion of the elements of New Jersey's *qui tam* statute – which, contrary to Plaintiff's assertion (*id.* at ¶ 66), is far from "typical" of these statutes.  Plaintiff claims, in conclusory fashion, that ESPN's fantasy sports leagues constitute gambling because the participant "wagers" the entry fee for the chance to win a prize, and the winner is determined predominantly by chance due to potential injuries to players and the vicissitudes of sports events in general.  (*Id.* at ¶¶ 49-50, 68).  As explained below, these bare-bone allegations are not sufficient to state a claim for the recovery of gambling losses.

**The Gambling-Loss Recovery Statutes**

The Qui Tam Statutes are derived from a pre-Revolutionary War English statute, are themselves hundreds of years old, and have largely fallen into

disuse in the United States.  Indeed, our research has not disclosed any action

within the past 50 years – under any of the Qui Tam Statutes – in which a plaintiff

with no connection to the alleged gambling losses was allowed to recover.

Nonetheless, Plaintiff endeavors to resurrect the Qui Tam Statutes and put them to

an unintended and unprecedented use – in a case where the purposes of the statutes

would not be served – solely to reap a windfall for himself.  Moreover, he does so

by attempting to plead only the elements of New Jersey's statute (*see id.* at ¶¶ 66-

73) and by misrepresenting that New Jersey's statute is "typical" of the others (*id.*

at ¶ 66), when in fact each of the Qui Tam Statutes provides different requirements

for recovery.

### The Statutes' History and Purpose

Although the specific elements of the Qui Tam Statutes vary, they

share a common origin and purpose.  The Qui Tam Statutes derive from the 1710

Statute of Queen Anne, an English statute that authorized gambling losers and

informers to sue to recover losses "of Ten Pounds," incurred "at any Time or

sitting by playing at Cards Dice Tables or other Game or Games whatsoever or by

betting on the Sides or Hands of such as do play at any of the Games aforesaid."  9

Anne ch. 19 (1710), *reproduced in* 9 Statutes of the Realm (George Eyre &

Andrew Strahan, pubs., 1810-1822).[6]  The American versions of the Statute of

Anne contain similar language and were similarly directed at deterring traditional

gaming.  New Jersey's statute, for example, was adopted in 1797 and permitted the

recovery of losses incurred "by playing at cards, dice, billiards, tables, tennis,

bowls, shuffle-board, or other game or games, or by betting on the sides or hands

of such as do play at any game or games, or by betting at cock-fighting, or other

sport or pastime."  Act to prevent Gaming, February 8, 1797, ¶¶ 4-5, *at* New Jersey

Session Laws, Legislature 21, 149-151.

   The Qui Tam Statutes were intended to serve two purposes, neither of

which is furthered by claims such as Plaintiff's here.  First, they were intended to

prevent gamblers and their families from becoming destitute due to gambling

losses – and thus becoming wards of the State – by providing a method for the

gambler's spouse, parent, or child to recover the lost money from the winner.  *See,*

*e.g.*, *Berkebile v. Outen*, 311 S.C. 50, 55 (1993) (*qui tam* statute's purpose is to

"protect[] a gambler . . . from abusing the vice and exceeding limits which bring

harm to the gambler and his or her family"); *Salonen v. Farley*, 82 F. Supp. 25, 28

(E.D. Ky. 1949) (*qui tam* statute was "primarily intended by the legislature . . . for

the protection of the dependents of those losing in gambling").  Second, they were

intended to supplement states' general anti-gaming provisions in an era when local

---

[6]  The Statute of Anne has been repealed in its entirety in the United Kingdom.
Gambling Act, c. 19, § 356(3)(a) (2005) (Eng.).

governments' own regulatory and enforcement powers were much less effective than they are today. *See, e.g., Vinson v. Casino Queen, Inc.*, 123 F.3d 655, 657 (7th Cir. 1997) ("The [Illinois] Loss Recovery Act was intended to deter illegal gambling by using its recovery provisions as a powerful enforcement mechanism."); *Salomon v. Taft Broadcasting Co.*, 16 Ohio App. 3d 336, 336, 475 N.E.2d 1292, 1293 (Ct. App. 1st Dist., 1984) (observing that *qui tam* statute was "born in a vanished era where the absence of an organized police authority to enforce criminal statutes made necessary the use of such rewards for informers"). This second purpose is much less significant today, when states have elaborate regulatory structures for enforcing gambling laws.[7]

### The Statutes' Differing Limits on Recovery

Although the Complaint alleges that New Jersey's *qui tam* statute is "typical" (Cmplt. ¶ 66), as shown in the chart below, the statutes differ as to who may be sued, whether there is a minimum loss requirement, the amount of a minimum loss requirement, whether there is a waiting period for *qui tam* actions during which only the loser can sue, and whether there is a specific limit on the time the *qui tam* plaintiff has to bring suit:

---

[7]  In fact, the president of the New Jersey Senate, Senator Richard Codey, introduced a bill during New Jersey's last legislative session that would amend New Jersey's *qui tam* statute so that only the state, and not a gambling loser or an informer, can sue to recover losses. *See* 2006 N.J.S.B. 1106 §§ 4, 5.

-11-

| State | Allows for Suit Against | Minimum Loss | Waiting Period/ Time Limit |
|-------|------------------------|--------------|---------------------------|
| **NJ**[8] | Winner, depositary or stakeholder | Not specified | 6-month waiting period.<br><br>6-month time limit from end of waiting period for informer to sue. |
| **D.C.**[9] | Winner | $25 or more "at any time or sitting" | 3-month waiting period. |
| **GA**[10] | Winner | Not specified | 6-month waiting period.<br><br>4-year time limit from end of waiting period for informer to sue. |
| **IL**[11] | Winner | $50 or more | 6-month waiting period. |
| **KY**[12] | Winner or "any transferee of the winner, having notice of the consideration" | $5 or more "at one (1) time, or within twenty-four (24) hours" | 6-month waiting period.<br><br>5-year time limit from delivery or payment of loss for informer to sue. |
| **MA**[13] | Not specified | Not specified | 3-month waiting period. |
| **OH**[14] | Winner | Not specified | 6-month waiting period. |
| **SC**[15] | Winner | $50 or more "at any time or sitting" | 3-month waiting period. |

---

[8] *See* N.J.S.A. 2A:40-5, -6.
[9] *See* D.C. Stat. Ann. § 16-1702.
[10] *See* Ga. Code Ann. § 13-8-3(b).
[11] *See* 720 I.L.C.S. § 5/28-8.
[12] *See* K.R.S. § 372.040.
[13] *See* M.G.L.A. 137 § 1.
[14] *See* R.C. §§ 3763.02, 3763.04.
[15] *See* S.C. Code 1976 §§ 32-1-10, 32-1-20.

1312288v1

Plaintiff does not acknowledge, much less attempt to plead facts establishing, any of the above elements of the Qui Tam Statutes. He likewise does not attempt to plead that paying an entry fee to participate in a fantasy sports league falls within the relevant definition of gambling for each jurisdiction's loss recovery statute. *See infra* pp. 28-31.

## ARGUMENT

## I.   LEGAL STANDARD FOR A MOTION TO DISMISS

In deciding this Rule 12(b)(6) motion to dismiss, the Court is required to accept as true the allegations in the complaint, and to view them in the light most favorable to the plaintiff, but the Court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Rather, the Third Circuit has explained that:

> the plaintiff must allege sufficient facts in the complaint to survive a Rule 12(b)(6) motion. Confronted with such a motion, the court must review the allegations of fact contained in the complaint; for this purpose, the court does not consider conclusory recitations of law. Rule 8(a) requires "a short and plain *statement* of the claim showing that the pleader is entitled to relief."

*Commonwealth of Pennsylvania v. PepsiCo, Inc.*, 836 F.2d 173, 179 (3d Cir. 1988) (quoting Fed. R. Civ. P. 8(a)) (emphasis added in original).

A plaintiff who fails to allege basic facts in support of his claims, like the Plaintiff here, should not be allowed to proceed. *See DM Research v. Coll. of*

1312288v1

*Am. Pathologists*, 170 F.3d 53, 55-56 (1st Cir. 1999) ("[T]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome.  Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.") (emphasis in original); *Zavala v. Wal-Mart Stores, Inc.*, ___ F. Supp. 2d ___, 2006 WL 2468513, at *1 (D.N.J. Aug. 28, 2006) ("[T]he claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist.").

Moreover, a court should dismiss a complaint with prejudice if amendment would be futile.  *See In re: Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004).  In assessing futility, the Court must consider whether the amended complaint could survive a Rule 12(b)(6) motion to dismiss.  *See id.* Because as a matter of law Plaintiff cannot in good faith state a claim here, this Court should dismiss the Complaint with prejudice.

## II.    THE GAMBLING-LOSS RECOVERY STATUTES MUST BE NARROWLY CONSTRUED

In deciding whether Plaintiff has stated – and will ever be able to state – a claim, the Court should construe the Qui Tam Statutes strictly and narrowly in light of (1) their history and purpose; (2) the fact that they are penal in nature; and (3) in recognition that they provide a remedy in derogation of the common law.  A strict and narrow construction is also appropriate given that Plaintiff has no

personal interest in the alleged losses and is asking the Court to decide as a matter of first impression that entry fees paid for a hobby enjoyed by tens of millions of Americans are recoverable as unlawful bets or wagers – even though no state government has ever attempted to prosecute fantasy sports providers or participants for engaging in illegal gambling and no state (or federal) court has held that fantasy sports leagues constitute unlawful gambling.

Courts have long held that the Qui Tam Statutes must be narrowly construed because they are penal.  *E.g.*, *Justice v. The Pantry*, 335 S.C. 572 (1999) (South Carolina statute is penal and must be strictly construed); *State v. Schwabie*, 84 N.E.2d 768, 770-71 (Ohio App. 1948) (Ohio statute is penal and must be strictly construed); *see also, e.g.*, *Kizer v. Walden*, 198 Ill. 274, 65 N.E. 116 (Ill. 1902) (Illinois statute is penal); *Donovan v. Eastern Racing Ass'n*, 324 Mass. 393, 86 N.E.2d 903 (Supreme Judicial Court, 1949) (Massachusetts statute is penal); *Glick v. MTV Networks*, 796 F. Supp. 743, 745 (S.D.N.Y. 1992) (New Jersey statute is "quasi-penal"); *Hartlieb v. Carr*, 94 F. Supp. 279, 281 (E.D. Ky. 1950) (Kentucky statute provides a penalty).

Courts have also construed the Qui Tam Statutes narrowly in light of their history and purpose, in part because they provided a remedy in derogation of the common law.  *E.g.*, *Vinson*, 123 F.3d at 657 (qui tam statute "should not be interpreted to yield a[] . . . result contrary to its purpose"); *Cole v. Applebury*, 136

Mass. 525, 530-31, 1884 WL 10512, at *5 (Mass. 1884) (qui tam statute "must be enforced . . . according to its intent . . . ."); *Thompson v. Ledbetter*, 74 Ga. App. 427, 428, 39 S.E.2d 720, 721 (Ct. App. Div. 2, 1946) (construing statute narrowly because gambling losses were not recoverable under the common law); *Johnson v. McGregor*, 41 N.E. 558 (Ill. Sup. Ct. 1895) (statutory conditions for recovery must be strictly observed because the right of action exists "by virtue of the statute only"); *Hooker v. Depalos*, 28 Ohio St. 251, 262, 1876 WL 6, at *7 (Ohio 1876) (because loss-recovery statutes "are in derogation of the common law[,] . . . [they] are to be construed strictly").

These principles of strict and narrow construction are particularly appropriate in this case, where the Plaintiff is seeking to recover unspecified losses to which he has no personal connection. While *qui tam* plaintiffs often have not personally suffered a loss, they are not excused from the obligation to allege specific facts demonstrating that their claims are within the narrow confines of the statutes under which they seek relief. In considering a similar claim brought by another lawyer seeking a windfall under a gambling loss recovery statute, the court in *Salomon v. Taft Broadcasting Co.*, 16 Ohio App. 3d 336, 336, 475 N.E.2d 1292, 1298 (Ct. App. 1st Dist., 1984), explained that given the anachronistic purpose of the *qui tam* statutes, it would be inappropriate to enforce them in any way that would extend their reach beyond the scope originally intended:

> [I]t is significant that no authority is cited to us from anywhere in this jurisdiction or elsewhere which would permit a third person, wholly a stranger to the transaction, to recover for his own use, unknown (but presumably substantial) amount of money lost by unnamed and unknowable persons in unspecified games of chance. . . .
>
> Similarly, it is not possible to ignore the ancient and arguably anachronistic nature of *qui tam* actions of the instant sort, born in a vanished era where the absence of an organized police authority to enforce criminal statutes made necessary the use of such rewards for informers. . . . While it is not within the authority of the judiciary to abolish legislative enactments, however obsolete they may arguably appear to be, we certainly are authorized to decline any construction which would extend and enlarge the thrust and scope of the legislation in question.

The *Salomon* court's reasoning is squarely applicable to this case.

The Court should not extend the Qui Tam Statutes to cover fantasy sports league entry fees unless that coverage is warranted by the explicit language of each statute and is supported by specific allegations by the Plaintiff. As shown below, neither the language of the *qui tam* statutes nor Plaintiff's pleadings justify permitting this case to proceed.

## III.   DISMISSAL WITH PREJUDICE IS WARRANTED BECAUSE PLAINTIFF HAS NOT STATED, AND CANNOT STATE, A CLAIM UNDER NEW JERSEY LAW

Although a chart in the Complaint refers to the *qui tam* statutes of eight jurisdictions (Cmplt. ¶ 65, Prayer for Relief ¶ A), Plaintiff's sparse allegations are tailored exclusively to New Jersey's gambling loss-recovery statute.

1312288v1

As the Complaint asserts, New Jersey law allows a loser – or a *qui tam* plaintiff after a waiting period – to recover from a "winner, depositary or stakeholder"[16] money lost by a "wager[], bet[] or stake[] made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event."[17]  *See, e.g., id.* at ¶ 66 (quoting N.J.S.A. 2A:40-6); *id.* at ¶ 68 ("the winning wager, bet or stake is achieved based predominantly on the lot, chance, casualty or unknown or contingent event"); *id.* at ¶ 69 ("defendants acted as the depository [sic] or stakeholder for bets").  Because Plaintiff does not address the elements of a cause of action under any State's law other than New Jersey's, this motion focuses principally on New Jersey law.

Under New Jersey law, Plaintiff fails to state a claim because he does not allege even the most basic facts concerning the alleged gambling loss – *e.g.,* the identity of the loser(s); the amount of each loser's loss; and when the loss

---

[16]  Only New Jersey's statute authorizes recovery against a "depositary or stakeholder."  Indeed, six of the other Qui Tam Statutes expressly provide that plaintiff can only assert a claim against the "winner" of the wager.  *See supra* at p. 12.

[17]  Application of New Jersey's *qui tam* statute, N.J.S.A. 2A:40-6, depends on New Jersey's first-party gambling loss recovery statute, N.J.S.A. 2A:40-5, which allows a loser to recover money lost in violation of N.J.S.A. 2A:40-1 – namely, money lost by a "wager[], bet[] or stake[] made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event."  The loser may bring suit against the "winner, depositary or stakeholder" to recover such money, provided he does so within six months of the loss.  N.J.S.A. 2A:40-5.  If the loser fails to do so, a *qui tam* plaintiff may bring suit to recover that money, again "provided" that suit is brought "within six months of the expiration of the loser's time to sue."  N.J.S.A. 2A:40-6.

1312288v1

occurred.  Moreover, Plaintiff cannot in good faith state a claim because, as a matter of law, the payment of an entry fee to participate in a game such as ESPN's fantasy sports leagues is not wagering, betting, or staking money.  Therefore, the Court should dismiss the Complaint with prejudice.

### A. Plaintiff Fails to State a Claim Under New Jersey's Gambling-Loss Recovery Statute

While the Complaint argues at length that fantasy sports leagues are "games of chance," Plaintiff does not address a far more fundamental question: What facts are there to support his claim that there exists a specific loss that he is entitled to recover under New Jersey's *qui tam* statute?  Plaintiff's Complaint is fatally defective in that it fails to allege the essential elements of a claim under New Jersey's statute and facts demonstrating that those elements are satisfied.

In 1898, the New Jersey Supreme Court held that a plaintiff proceeding under the gambling loss recovery *qui tam* statute is "legally bound" to show with "clearness and certainty" that his case is "within the statute." *Fitzgerald v. Schloss*, 33 Vroom 472, 474, 41 A. 677 (N.J. 1898).  In that case, unlike here, the *qui tam* plaintiff identified a specific individual who lost money to the defendant on a specific race. *Id.*  Nonetheless, the Court upheld a dismissal of the complaint because – although the plaintiff had alleged that the individual had "lost" money on a race to the defendant – the plaintiff had not specifically alleged

that the money was a bet or wager on the race and that the defendant was the winner. *Id.*

Here, the Complaint is far less detailed than the pleading dismissed in *Fitzgerald*: Plaintiff does not identify any individual who paid an entry fee to play one of ESPN's fantasy sports games; he does not identify the nature of the "wager" or "bet" made between such an individual and ESPN; he does not allege when the loss occurred; and, as in *Fitzgerald*, he does not allege that such an individual lost such a "wager" or "bet" to ESPN. Given that the substantially more detailed complaint in *Fitzgerald* could not survive a dismissal motion, *a fortiori* the Complaint here cannot survive.

New Jersey's adoption of more modern notice pleading rules has not changed the strict requirement that a plaintiff seeking to pursue a claim under the gambling loss recovery statute "must, in his pleading, allege all the facts necessary to bring him within the statute." *Zabady v. Frame*, 22 N.J. Super. 68, 70, 91 A.2d 643 (App. Div. 1952). As the *Zabady* court noted in requiring that every "essential element" of the gambling loss recovery statute must be pleaded:

> the substantive law has not been changed by the adoption of our new rules but, on the contrary, it has been preserved, and our procedure has been made to serve the ends of substantial justice, not by abandoning stating the essentials of a cause of action or defense, but by doing so in simple, concise and direct terms.

*Zabady*, 22 N.J. Super. at 71.  Here, the Complaint should be dismissed because it lacks the most basic factual allegations necessary to support Plaintiff's claim.  *See PepsiCo*, 836 F.2d at 179; *see also Justice*, 335 S.C. at 577-78 (holding that even under modern pleading standards, a *qui tam* plaintiff must plead "the fundamental facts necessary to establish a cause of action under [South Carolina's] statute," including that the loss was incurred "at any *one* time (i.e. a single bet) or sitting (i.e. a course of play)"; that "the loss occurred 'by playing at cards, dice table or any other game'"; "to whom the alleged losses occurred"; and "the time period when [the plaintiff] claims the losses occurred").

In addition to failing to plead the identity of the loser(s), the amount of each loser's loss, when the loss occurred, the nature of the "wager" or "bet" made between a "loser" and ESPN, and that the "loser" lost such a "wager" or "bet" to ESPN, Plaintiff does not allege that (1) a "loser" failed to bring suit within six months of losing the bet; and (2) his own suit is brought within six months of the expiration of that loser's time to sue.  New Jersey courts have held that the six-month time limitation provided for in New Jersey's gambling loss recovery statute is an affirmative element of the claim that must be pleaded.  *Zabady*, 22 N.J. Super. at 70 (requirement that loser sue within six months "is a condition attached to the right to sue," rather than a limitation on recovery, and "[a] complaint does not state a cause of action if it fails to contain an allegation showing compliance

with this essential element"); *Shack v. Dickenshorst*, 14 Gummere 120, 122, 122 A. 436, 436 (N.J. Court of Errors and Appeals, 1923) (same).  Failure to plead compliance with these time limits mandates dismissal of the Complaint.  *See Zabady*, 22 N.J. Super. at 70 (dismissing complaint for failure to plead compliance with time limits); *Shack*, 14 Gummere at 122, 122 A. at 436 (same).

In sum, Plaintiff has neither alleged all of the elements of a claim under New Jersey's *qui tam* statute nor alleged a "*factual* predicate concrete enough to warrant further proceedings," *DM Research*, 170 F.3d at 55-56, much less the type of factual predicate required by courts strictly and narrowly construing the Qui Tam Statutes.  Furthermore, New Jersey courts' strict enforcement of the pleading requirements is particularly appropriate here given that Plaintiff has no connection with the alleged (and unidentified) loss and merely seeks a windfall.  Given the complete absence of factual allegations showing a recoverable loss under New Jersey's *qui tam* statute, the Court should dismiss the Complaint for failure to state a claim.

## B. The Complaint Should Be Dismissed With Prejudice Because Paying an Entry Fee to Participate in Fantasy Sports Leagues Is Not Gambling

New Jersey allows recovery *only* of "*wagers, bets or stakes* made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event."  *See* N.J.S.A. 2A:40-1

(emphasis added).  Although Plaintiff uses the words "wager" and "bet" to describe the entry fees for ESPN's fantasy sports games (*e.g.*, Cmplt. ¶¶ 4, 19), those allegations are legal conclusions, and "a court need not credit a complaint's . . . legal conclusions when deciding a motion to dismiss." *See Morse*, 132 F.3d at 906 (quotations omitted).  And contrary to those allegations, courts have found – as a matter of law – that entry fees such as those paid by participants in ESPN's fantasy sports leagues do not constitute "bets" or "wagers" where (1) the entry fees are set amounts that are paid unconditionally; (2) the prizes for the fantasy sports leagues are guaranteed – *i.e.*, they are certain to be awarded to one of the contestants and are not dependent on the number of entrants; and (3) the party offering the prize – here ESPN – is not also competing for it.

As Plaintiff alleges, ESPN fantasy sports league participants pay a set fee for each team they enter in a fantasy sports league, ranging from $13.99 to $29.95.  (Cmplt. ¶¶ 19, 37).  This entry fee is paid at the beginning of a fantasy sports season and allows the participant to receive related support services and to compete against other teams in a league throughout the season.  As Plaintiff further alleges, ESPN offers set prizes for each league winner (a T-shirt or banner with a retail value of $15.00) and for the overall winners each season (Best Buy gift certificates with values ranging from $499 to $3000, or, in the case of fantasy football, a plasma television).  (*Id.* at ¶¶ 37-38).  These prizes are guaranteed to be

awarded at the end of the season, and the amount of the prize does not depend on the number of entrants.  Moreover, ESPN is a neutral third party in the fantasy sports games – it does not compete for the prizes and is indifferent as to who wins the prizes.  It simply administers and provides internet-based information and related support services for the games.  Plaintiff does not allege otherwise, nor could he make such allegations in good faith.

New Jersey courts have not addressed the three-factor scenario present here – entry fees that are paid unconditionally, prizes that are guaranteed to be awarded, and prizes for which the game operator is not competing.[18]  Courts throughout the country, however, have long recognized that it would be "patently absurd" to hold that "the combination of an entry fee and a prize equals gambling," because if that were the case, countless contests engaged in every day would be unlawful gambling, including "golf tournaments, bridge tournaments, local and state rodeos or fair contests, . . . literary or essay competitions, . . . livestock, poultry, and produce exhibitions, track meets, spelling bees, beauty contests, and the like," and contest participants and sponsors could all be subject to criminal liability.  *State v. Am. Holiday Ass'n, Inc.*, 151 Ariz. 312, 727 P.2d 807, 809, 812

---

[18]  Older New Jersey cases, such as *Carll & Ramagosa, Inc. v. Ash*, 23 N.J. 436, 446, 129 A.2d 433 (1957) (which involved boardwalk games such as ring toss and darts in which prizes were offered), found illegal gambling where two of the three factors were present – unconditional payment of a fee and an operator not competing for a prize.  None of these cases, however, involved a situation in which an operator guaranteed that a prize would be awarded to someone in each game.

(Ariz. 1986) (*en banc*).  Moreover, courts have granted motions to dismiss where, as here, the activity at issue consisted of paying a set fee to enter a contest guaranteeing a prize.  *See, e.g.*, *Am. Holiday Ass'n*, 727 P.2d at 807 (affirming dismissal of indictment on the ground that, as a matter of law, contest at issue did not involve betting or wagering); *Toomey v. Penwell*, 76 Mont. 166, 245 P. 943, 945 (Mont. 1926) (affirming dismissal of complaint for failure to state a claim because, as a matter of law, a promise to pay an entry fee to run a horse in a race with a guaranteed prize was not a gambling transaction).

Courts have distinguished between bona fide entry fees and bets or wagers, holding that entry fees do not constitute bets or wagers where they are paid unconditionally for the privilege of participating in a contest, and the prize is for an amount certain that is guaranteed to be won by one of the contestants (not the entity offering the prize).  Courts that have examined this issue have reasoned that when the entry fees and prizes are unconditional and guaranteed, the element of risk necessary to constitute betting or wagering is missing:

> A prize or premium differs from a wager in that in the former, the person offering the same has no chance of gaining back the thing offered, but, if he abides by his offer, he must lose; whereas in the latter, each party interested therein has a chance of gain and takes a risk of loss. . . .
>
> The fact that each contestant is required to pay an entrance fee where the entrance fee does not specifically

> make up the purse or premium contested for does not
> convert the contest into a wager.

*Las Vegas Hacienda, Inc. v. Gibson*, 77 Nev. 25, 359 P.2d 85, 86-87 (Nev. 1961).

*See also Am. Holiday Ass'n*, 727 P.2d at 810 ("[A] bet is a situation in which the

money or prize belongs to the persons posting it, each of whom has a chance to

win it.  Prize money, on the other hand, is found where the money or other prize

belongs to the person offering it, who has no chance to win it and who is

unconditionally obligated to pay it to the successful contestant."); *Toomey*, 245 P.

at 945 ("In the case of a bet or wager, the money belongs to the persons who post

it, every one of whom has a chance to win it.  In the case of a purse or premium,

the money belongs to the person or association offering it, and such person or

association has not any chance whatever to win it . . . .").

Therefore, where the entry fees are unconditional and the prizes are

guaranteed, "reasonable entrance fees charged by the sponsor of a contest to

participants competing for prizes are not bets or wagers."  *Am. Holiday Ass'n*, 727

P.2d at 811 (holding as a matter of law that entry fees were not bets or wagers

where participants paid a set fee ranging from $1.00 to $15.00 to enter a crossword

puzzle contest operated by the defendant, which offered set prizes including cash

and automobiles for winners at various levels; contest prizes were not contingent

on the number of entrants; and the advertised prizes were always awarded).  *See*

*also Las Vegas Hacienda*, 359 P.2d at 86-87 (holding as a matter of law that

contest requiring entry fee of 50 cents and promising $5000 to any golfer who hit a hole-in-one on defendant's golf course was not gambling, whether or not the outcome of the contest was determined by skill or chance); *Toomey*, 245 P. at 945 (holding as a matter of law that entry fee paid to run horse in race for guaranteed prize of $375 offered by a state fair association was not a bet or wager or other gambling consideration, because the entry fee was "paid unconditionally and in good faith for the privilege of entering the contest"); *Wilson v. Conlin*, 3 Ill. App. 517, 1878 WL 10565, at *2 (Ill. App. 2d Dist. 1878) (holding as a matter of law that payment of fee to enter horse race with prize was not a gambling transaction where the fee was paid unconditionally and the prize was an amount certain to be paid to the successful contestant; "[t]o require a fee in advance for the privilege of being admitted to contest the prize, is no more a gambling process than the offer of a prize to the successful party").

The above cases demonstrate that, as a matter of law, the entry fees for ESPN's fantasy sports leagues are not "bets" or "wagers" because (1) the entry fees are paid unconditionally; (2) the prizes offered to fantasy sports contestants are for amounts certain and are guaranteed to be awarded; and (3) ESPN does not compete for the prizes. This Court should not deviate from this well settled law, nor should it extend the coverage of a 200-year old statute to an activity far removed from the traditional gaming it was intended to cover. *See Salomon*, 16

Ohio App. 3d at 336, 475 N.E.2d at 1293 (court should "decline any construction which would extend and enlarge the thrust and scope" of the *qui tam* statute); *Am. Holiday Ass'n*, 727 P.2d at 812 ("[i]n the absence of explicit legislative intent or specific statutory language, we are reluctant to adopt a statutory interpretation which would turn sponsors" of common prize contests "into . . . felons operating gambling games").

Because fantasy sports league entry fees are not "bets" or "wagers," Plaintiff cannot recover them under New Jersey's *qui tam* statute.  The Complaint should be dismissed with prejudice.  *See Am. Holiday Ass'n*, 727 P.2d at 807 (affirming dismissal of indictment predicated on betting or wagering); *Toomey*, 245 P. at 945 (affirming dismissal of complaint because activity did not constitute betting or wagering).

C.    **Even if the Court Were to Consider Statutes Other Than New Jersey's, Dismissal is Warranted Because Plaintiff Has Failed to State a Claim.**

Even if this Court were to reach the merits of Plaintiff's claims under the statutes of each of the eight jurisdictions he cites, those claims would fail.  The Complaint's pleading deficiencies are even more apparent when the non-New Jersey statutes are considered, given Plaintiff's failure to even acknowledge the elements of those statutes, much less provide factual allegations to satisfy those elements.

For example, all of the seven other statutes, like New Jersey's statute, have a time limit that must be pled. *See supra* at p. 12.  The Complaint does not plead a time limit as to any statute.  Moreover, the statutes of the District of Columbia, South Carolina, and Kentucky authorize recovery only of sums that are wagered and lost at a single sitting.  Like the time limits, the "one time or sitting" requirement must be pled or the complaint is subject to dismissal. *Justice*, 335 S.C. at 577.  Here, however, the Complaint does not allege that the losses were incurred at "one time or sitting."  Several of these statutes also contain minimum loss thresholds, which Plaintiff has not pled and, in some cases, clearly cannot meet:  Illinois and South Carolina, for example, both require a minimum loss of $50, which exceeds the largest per-team fee – $29.95 – charged by ESPN.  *See* 720 I.L.C.S. § 5/28-8(a); S.C. Code 1976 § 32-1-10.

Further, six of the Qui Tam Statutes provide that an action may only be filed against the "winner" of the plaintiff's gambling losses. *See supra* at p. 12; *see also Goldberg v. Feiga*, 170 Mass. 146, 48 N.E. 1073 (Supreme Judicial Court, 1898) (statute does not specify proper defendants; recovery is not allowed against stakeholder).  However, ESPN cannot be considered a "winner" for purposes of these statutes, because it has not wagered anything in the contest and has no chance to win the prize – ESPN must pay out the prize regardless of the outcome of the contest.

Finally, as a matter of law, Plaintiff will not be able to show that any of the Qui Tam Statutes' definitions of gambling activities cover participation in ESPN's fantasy sports leagues.  As discussed above in connection with New Jersey law, an individual who pays an entry fee unconditionally to participate in a contest for a guaranteed prize is not making a wager on the outcome of that contest.  *See, e.g., Stevens v. Cincinnati Times-Star Co.*, 72 Ohio St. 112, 151, 73 N.E. 1058, 1062 (Ohio 1905) (agreeing that a newspaper's contest for guessing the number of votes in an upcoming election did not involve bets between the participants and the newspaper); *Wilson*, 3 Ill. App. 517, 1878 WL 10565, at *2 (holding that payment of fee to enter horse race with prize was not a gambling transaction where the fee was paid unconditionally and the prize was an amount certain to be paid to the successful contestant); *Wilkinson v. Stitt*, 175 Mass. 581, 584, 56 N.E. 830 (Sup. Jud. Ct., Bristol, 1900) (holding that it was not "betting, gambling or wagering" for members of three bicycle associations to compete in a race for a cup, where the cup was offered as a prize by third parties who were not competing in the race). For the same reason – *i.e.*, that there is no risk as to whether the fee will be paid or as to whether a certain prize will be awarded – the participant does not stand to lose money "by playing" the game.  The participant has no claim to the fee once it is paid, regardless of the outcome of the game.  Therefore, Plaintiff will not be able to show that the entry fees constitute money lost in a manner covered by the Qui

Tam Statutes.  *See* D.C. Stat. Ann. § 16-1702 (applies to money lost "by playing at cards, dice, or any other game"); S.C. Code 1976 § 32-1-10 (same); M.G.L.A. 137 § 1 (same); 720 I.L.C.S. § 5/28-8 (applies to certain money lost "play[ing] a game" or "mak[ing] a wager upon the result of any game," 720 I.L.C.A. § 5/28-1(a)(1), -1(a)(2)); K.R.S. § 372.010 (applies to "money . . . won, lost or bet in any game, sport, pastime or wager"); and Ohio R.C. § 3763.02 (applies to money lost "by playing a game, or by a wager").

In sum, while the Complaint does not plead the elements of any cause of action under the non-New Jersey *qui tam* statutes, an analysis of those statutes confirms that the Plaintiff also *cannot* state a claim under any of them.

**D.     This Court Has the Authority to Abstain From Deciding This Case.**

Even if this Court determines (1) that Plaintiff is asserting a claim under the law of all eight jurisdictions, and not just New Jersey, and (2) that the Complaint is not fatally defective under those laws for the reasons outlined above, this Court still has the authority to dismiss the case based upon the federalism concerns presented by Plaintiff's unprecedented request for relief based upon statutes from eight different jurisdictions.  The United States Supreme Court held nearly a half-century ago in *Louisiana Power & Light Co. v. Thibodaux*, 360 U.S. 25 (1959), that a federal court should abstain from deciding a case where the complaint "present[s] difficult questions of state law bearing on policy problems of

substantial public import whose importance transcends the result in the case . . . at

bar." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800,

814 (1976) (describing when abstention is appropriate under *Thibodaux*).

Moreover, courts have greater discretion to abstain where, as here, there is no

federal claim and the only basis for federal jurisdiction is diversity. *See Lac*

*D'Amiante du Quebec, LTEE v. Am. Home Assurance Co.*, 864 F.2d 1033, 1044

(3d Cir. 1988) ("[F]ederal courts more readily abstain from a case that contains no

issue of federal law."). Applying this standard, the Complaint should be

dismissed.

First, this case presents an unsettled question of state law, because the

central issue – whether fantasy sports participation constitutes gambling – raises an

issue of first impression in each of the jurisdictions and, indeed, a question that has

never been decided by any state or federal court. *See Lac D'Amiante*, 864 F.2d at

1044 n.12 (*Thibodaux* applies where there is "uncertainty surrounding . . .

important issues of state" law).

Second, the question whether fantasy sports participation is gambling

presents a "policy problem[] of substantial public import" to the states whose

statutes are at issue. Thirty million Americans – including millions living in the

states at issue – participate in fantasy sports leagues. Moreover, courts have long

recognized that "[t]he regulation of gambling enterprises lies at the heart of the

state's police power," and is "an area where state authority has long been

preeminent." *Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 719 (4th Cir.

1999).

Third, the "importance" of the question raised by the Complaint

"transcends the result in the case . . . at bar" because this Court's determination

will have a significant impact on all entities and individuals involved in fantasy

sports – from the individual fantasy sports participants, to the defendants and other

companies offering fantasy sports, to the service providers who facilitate the

activity (such as credit card companies), each of which could be exposed to both

civil and criminal liability if fantasy sports participation is found to constitute

gambling. Plaintiff, on the other hand, has no personal interest beyond collecting a

bounty; he merely stands as the representative of states whose politicians and law

enforcement officers have chosen not to deter participation in or operation of

fantasy sports leagues. Each of the states cited in the Complaint actively regulates

gambling, so the decision of state officials not to pursue fantasy sports providers as

operators of illegal gambling schemes is significant.

Because the decision to categorize an activity as gambling is so

central to state interests, and because the impact of such a decision inevitably

extends far beyond the parties to any particular lawsuit, federal courts have

abstained from deciding state law questions where a decision might change which

activities are considered illegal gambling in a state.[19]  The result should be no

different here.

## CONCLUSION

For the reasons stated above, ESPN respectfully requests that the

Court dismiss the Complaint with prejudice for failure to state a claim.


Dated:  September 28, 2006

PATTERSON, BELKNAP,
WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
(212) 336-2000

By: _____
        Peter C. Harvey (RH-7368)

Attorneys for Defendant
ESPN, Inc.

---

[19] *E.g., Johnson*, 199 F.3d at 728 (holding that district court should have abstained from deciding the meaning of the maximum payout provision in South Carolina's video poker gambling statute because the question "involved a most basic problem of South Carolina public policy"); *Martin v. Stewart*, 438 F. Supp. 2d 603, 607 (D.S.C. 2006) (abstaining where plaintiff's claim that video poker statute was unconstitutional would require the court to decide whether video poker falls within the prohibition of "games of chance;" court ruled that because "[t]he meaning of 'games of chance' is [at] the heart of South Carolina's regulation of video gaming," it is "a much more appropriate issue for a South Carolina state court to decide"); *Club Ass'n of West Virginia, Inc. v. Wise*, 156 F. Supp. 2d 599 (S.D. W.Va. 2001) (abstention warranted where case presented question of whether West Virginia's newly enacted – and politically volatile – Limited Video Lottery Act allowed "gambling" in violation of the state constitution); *Chun v. State of New York*, 807 F. Supp. 288 (S.D.N.Y. 1992) (abstaining from hearing a plaintiff's federal constitutional claims that would require decision of whether the sale in New York of out-of-state lottery tickets constituted "unlawful gambling" under New York state law, where New York state courts were also considering the issue).

1312288v1